**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

RECEIVED
2017 JUL 27 P 3: 02

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

EL JALISCO MEXICAN GRILL
INC. OF ALABAMA, LLC,

Plaintiff,

Civil Action No. 2:17-cv-505-CSC

v.

SYSCO CENTRAL ALABAMA,
INC., SYSCO CORPORATION and
FICTITIOUS DEFENDANTS "A,"
"B," and "C,"

Defendants.

## DEFENDANTS SYSCO CENTRAL ALABAMA, INC., AND SYSCO CORPORATION'S NOTICE OF REMOVAL

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§ 1441, 1446, and 1453, Defendants Sysco Central Alabama, Inc. and Sysco Corporation (collectively "Sysco Defendants") remove this action from the Circuit Court of Barbour County, Alabama, Eufaula Division ("Barbour County Circuit Court"), showing as grounds therefor:

### Compliance with the Procedural Requirements for Removal

Sysco Defendants have been named as the sole Defendants in the action styled *El Jalisco Mexican Grill Inc. of Alabama, LLC v. Sysco Central Alabama, Inc., and Sysco Corporation*, pending as Case Number 2017- CV-900044 in the Circuit Court of Barbour County, Eufaula Division (the "State Court Action"). In

addition to El Jalisco, two additional plaintiffs—Barb's Country Kitchen, LLC ("Barb's Country Kitchen") and Byrd's Nest Sports Bar & Grill ("Byrd's Nest")— have also filed Class Action Complaints against both Sysco Corporation and Sysco Central Alabama. Barb's Country Kitchen filed its Class Action Complaint on May 31, 2017, in the Circuit Court of Barbour County, Eufaula Division; Sysco timely removed this action to the United States District Court for the Middle District of Alabama, Northern Division. This case is currently pending in the United States District Court for the Middle District of Alabama, Northern Division as Civil Action No. 2:17-cv-00413-WC.

Byrd's Nest filed its Class Action Complaint on June 26, 2017, in the Circuit Court of Barbour County, Eufaula Division. This case is currently pending as Case Number 2017-CV-900043 and is styled *Byrd's Nest Sports Bar & Grill v. Sysco Central Alabama, Inc., and Sysco Corporation*. The Class Action Complaints filed by Barb's Country Kitchen and Byrd's Nest are attached hereto as **Composite Exhibit "E."**

As their respective Class Action Complaints reflect, Byrd's Nest, Barb's Country Kitchen, and El Jalisco (1) all name the Sysco Defendants as the sole defendants; (2) all allege the same causes of action based on the purported impropriety of a fuel surcharge; and (3) all purport to limit the total damages for each suit to no more than $4,995,000 (as explained below, such purported

2

limitations are a nullity).  The Class Action Complaints filed by Byrd's Nest, Barb's Country Kitchen, and El Jalisco are identical in all material respects—the only difference among them is that their respective class definitions seek relief for different two-year time periods:

- Byrd's Nest seeks relief against the Sysco Defendants for fuel surcharges collected from June 27, 2013 through March 21, 2015;

- Barb's Country Kitchen seeks relief against the Sysco Defendants for fuel surcharges collected from March 22, 2015 through March 22, 2017; and

- El Jalisco seeks relief against the Sysco Defendants for fuel surcharges collected from June 26, 2011 through June 26, 2013.[1]

Sysco Defendants provide this Court with information regarding the actions filed by Barb's Country Kitchen and Byrd's Nest because they are relevant to this Court's analysis with regard to the Class Action Fairness Act removal of the State Court Action.

## I.    Compliance with the Procedural Requirements for Removal

1.    Plaintiff El Jalisco Mexican Grill Inc. of Alabama, LLC ("El Jalisco" or "Plaintiff") filed and served its Class Action Complaint in the State Court Action ("Plaintiff's Class Action Complaint") on June 26, 2017.  Sysco Defendants

---

[1] El Jalisco also alleged that it was charged and paid fuel surcharges "multiple times, including from October 31, 2011 through June 17, 2013."  Composite Ex. A, El Jalisco Complaint, ¶ 19.

3

have sought no affirmative relief in the State Court Action after the June 26, 2017 filing of El Jalisco's Class Action Complaint, so as to preserve Sysco Defendants' right to remove.

2.    In accordance with 28 U.S.C. § 1446(b) and Fed. R. Civ. P. 6(a), Sysco Defendants file this Notice of Removal within thirty (30) days of service of the Complaint.

3.    In accordance with 28 U.S.C. § 1446(a), Sysco Defendants attach copies of all process, pleadings, and orders served on it in the State Court Action as **Composite Exhibit "A."**

4.    Promptly after filing this Notice of Removal, Sysco Defendants will give written notice of the removal to Plaintiff through its attorneys of record in the State Court Action, as well as to the Clerk of the Court in the State Court action, as required by 28 U.S.C. § 1446(d). *See* Composite Exhibit A.

5.    This case properly may be removed to this Division of this United States District Court under 28 U.S.C. §§ 1332, 1441(a), and 1453. The Barbour County Circuit, Eufaula Division is located within the jurisdiction of the United States District Court for the Middle District of Alabama, Northern Division.

6.    As set forth below, removal is proper under 28 U.S.C. §§ 1332(d) and 1453 because this case is (a) a class action, (b) with proposed classes containing 100 or more members in the aggregate, (c) in which El Jalisco is a citizen of a state

4

that is different from Sysco Defendants, and (d) the matter in controversy exceeds $5,000,000.

### A.   *Citizenship of the Parties*

7.   According to the Complaint, El Jalisco is an Alabama corporation with its principal place of business in Eufaula, Barbour County.  Plaintiff's Class Action Complaint, ¶ 4.

8.   Sysco Corporation is a Delaware company with its principal place of business in Houston, Texas.  *Id.* ¶ 6.

9.   Sysco Central Alabama, Inc. is a Delaware company with its principal place of business in Alabama.  *See* Declaration of Jennifer Gourley attached as **Exhibit "B"**.

10.   Thus, there is diversity of citizenship between the named Plaintiff and members of the putative class (Alabama), on the one hand, and at least one named Defendant, Sysco Corporation (Delaware and Texas), on the other hand.  *See Eisenberg v. McCulley*, No. 15-10323, 2015 WL 3619751, *1 (11th Cir. June 11, 2015) (observing that "a corporation is 'deemed to be a citizen of every State and foreign state by which it has been incorporated and . . . where it has its principal place of business.'").

## II.   Putative Class Definitions, Class Period, and Causes of Action Alleged

11.     El Jalisco's Class Action Complaint purports to seek relief on behalf of the following putative class:

> All Alabama persons and/or Alabama entities who paid "fuel surcharges" and/or other similar charges to Defendants from June 26, 2011 through June 26, 2013.

*Id.* ¶ 9.

12.     El Jalisco's Class Action Complaint also purports to seek relief on behalf of the following additional putative subclass:

> All Alabama persons and/or Alabama entities who entered into a written contract with Sysco Central Alabama, Inc. and/or Sysco Corporation who paid "fuel surcharges" and/or other similar charges to Defendants from June 26, 2011 through June 26, 2013.

*Id.* ¶ 10.

13.     The June 26, 2011 through June 26, 2013 proposed class period as drawn from ¶ 9 and ¶ 10 of Plaintiff's Class Action Complaint does not control, but the relevant class period to determine the amount in controversy is instead defined by the time frame during which the Sysco Defendants' challenged fuel surcharge assessment practice continued (March 2011 to present), subject to any legal constraints imposed by the governing statute of limitations. *See Cliff v. Payco General American Credits, Inc.*, 363 F.3d 1113, 1132-33 (11th Cir. 2004) (class action complaint should adequately notify defendants not only of the substantive claims brought against them, but the potential plaintiffs who may participate in the

judgment, within period set by statute of limitations, thereby providing defendants with the essential information to determine both the subject matter and the size of the prospective litigation) (citing *American Pipe v. Utah*, 414 U.S. 538 (1974) and *Arneil v. Ramsey*, 550 F.2d 774 (2d Cir. 1977)). The claims for relief which Plaintiff asserts against the Sysco Defendants in Plaintiff's Class Action Complaint are as follows:

(i)     The first cause of action for misrepresentation, which under Section 6-2-38 of the Alabama Code is subject to a two (2) year statute of limitations[2];

(ii)     The second cause of action for suppression, which under Section 6-2-38 of the Alabama Code is subject to a two (2) year statute of limitations;

(iii)     The third cause of action for unjust enrichment, which is either subject to the two (2) year catchall statute of limitations under Section 6-2-38 of the Alabama Code or the six (6) year contract statute of limitations under Section 6-2-34 of the Alabama Code, *see Auburn Univ. v. International Bus. Machs. Corp.*, 716 F.Supp. 2d 1114, 1118 (M.D. Ala. 2010) ("[s]ome unjust enrichment claims, such as claims flowing from a breach of the corporate fiduciary duties of loyalty and due care, clearly arise from tort injuries, while other unjust enrichment claims, such as claims for enrichment flowing from the rendering of substantial performance on a merely technically invalid contract, clearly arise from contract

---

[2]Section 6-2-3 of the Alabama Code further provides that a claim sounding in fraud does not accrue until the discovery by the plaintiff of the facts constituting the fraud, or the time by which the fraud should reasonably have been discovered.

37505313v1

injuries."). After noting the District Court's approach in *Auburn University*, the Alabama Supreme Court has recently acknowledged that "there is a distinct absence of authority definitely stating the statute of limitations applicable to an unjust enrichment claim." *Snider v. Morgan*, 113 So.3d 643, 655 (Ala. 2012).

(iv)   The fourth cause of action for breach of contract, which is subject to the six (6) year statute of limitations under Section 6-2-34 of the Alabama Code.

14.   Based on the claims asserted in Plaintiff's Class Action Complaint and its June 26, 2017 filing date, the relevant class period to determine the amount in controversy is March 2011 to June 2017, which is consistent with when the Sysco Defendants began assessing fuel surcharges in Alabama and the six (6) year statute of limitations applicable to the contract claims that El Jalisco has brought on behalf of the putative class.   These class members are the real parties in interest implicated by Plaintiff's Class Action Complaint, and therefore "they are treated as class plaintiffs for purposes of CAFA jurisdiction even if they are not named parties or alleged members of a Rule 23 class." *Schwartz v. SCI Funeral Services of Florida, Inc.*, 931 F.Supp. 2d 1191, 1197-98 (S.D. Fla. 2013) (citations omitted). Notably, the Eleventh Circuit held in *McGee v. Sentinel Offender Services, LLC*, 719 F.3d 1236, 1241-41 (11th Cir. 2013) that when determining amount of controversy for purposes of CAFA, "we do not consider whether some damages claimed by the plaintiff might be precluded by a statute of limitations" because

8

"courts cannot look past the complaint to the merits of a defense that has not yet been established." *Id.*

## III. Removal of El Jalisco's Class Action Pursuant to 28 U.S.C. §§ 1332(d) and 1453

15.     Under the Class Action Fairness Act of 2005 ("CAFA"), a "class action" may be removed where "any member of a class of plaintiffs is a citizen of a State different from any defendant" and "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2) and 1453. For purposes of the $5,000,000 jurisdictional requirement, "the claims of the individual class members shall be aggregated." 28 U.S.C. § 1332(d)(6).

### A.     *Byrd's Nest, Barb's Country Kitchen, and El Jalisco May Not Arbitrarily Splinter Their Claims for Purposes of Circumventing CAFA Jurisdiction*

16.     Claims may not be splintered solely for purposes of circumventing CAFA jurisdiction. *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1350 (2013) (explaining that permitting a $100 million action to be subdivided into "21 just-below-$5-million state-court actions . . . would squarely conflict with [CAFA's] objective."); *Freeman v. Blue Ridge Paper Prods., Inc.*, 551 F.3d 405, 409 (6th Cir. 2008).[3] In *Freeman*, a group of plaintiffs filed five separate lawsuits

---

[3] *Standard Fire* is not the first case to prohibit the structuring of claims for the sole purpose of avoiding CAFA jurisdiction. In 2008—five years before *Standard Fire*—both *Freeman* and *Proffitt v. Abbott Laboratories* (discussed later in this section) precluded plaintiffs from arbitrarily breaking up their claims

in state court for nuisance based on alleged water pollution from a paper mill. *Id.* at 406. The lawsuits all shared identical parties and causes of action, and each suit limited "the total damages for each suit to less than CAFA's $5 million threshold." *Id.* The only difference among the five lawsuits was that they sought relief for "a series of different, sequential six-month periods." *Id.* In holding that the five suits were properly removed to federal court, the Sixth Circuit observed, "[t]he complaints are identical in all respects except for the artificially broken up time periods. Plaintiffs put forth no colorable reason for breaking up the lawsuits in this fashion, other than to avoid federal jurisdiction." *Id.* at 407. The Court further observed that allowing plaintiff's five suits—which were identical in all material respects—to proceed as separate state court actions would undermine the very Congressional intent behind the enactment of CAFA:

> If such pure structuring permits class plaintiffs to avoid CAFA, then Congress's obvious purpose in passing the statue—to allow defendants to defend large interstate class actions in federal court—can be avoided almost at will, as long as state law permits suits to be broken up on some basis.
>     CAFA was clearly designed to prevent plaintiffs from artificially structuring their suits to avoid federal jurisdiction. . . . According to the relevant Senate Report, CAFA was necessary because the previous law "enabled lawyers to 'game' the procedural rules and keep nationwide or multi-state class actions in state courts whose judges have reputations for readily certifying classes and approving settlements without regard to class member interests."

---

into a series of smaller and nearly identical lawsuits for no other reason than to circumvent CAFA jurisdiction.

37505313v1

*Id.* at 407-08 (quoting S. Rep. No. 109-14, at 4, U.S. Code Cong & Admin. News 2005, p. 3 (2005)).

17.     Similarly, in *Proffitt v. Abbott Laboratories*, No. 08-CV-151, 2008 WL 4401367 (E.D. Tenn. Sept. 23, 2008), the court considered plaintiff's motion to remand eleven separate lawsuits, which were identical to each other in all respects except for the time periods they covered. *Proffitt*, 2008 WL 4401367, at *2,*5. Each of the eleven suits alleged that the defendant participated in a conspiracy to maintain a monopoly over a certain drug market. *Id.* at *1-*2. In denying plaintiff's motion to remand, the court explained that, for purposes of CAFA, plaintiff's eleven separate suits constituted one class action. *Id.* at *5. In support of this rationale, the court observed, "[t]he only difference among the eleven lawsuits filed by plaintiff is the time period each is allowed to cover. The plaintiff and defendant are the same in each case, and it is clear to the court that the allegations cover one antitrust conspiracy concerning the same drug." *Id.* at *2. The court further observed that each of the eleven suits contained "allegations concerning the entire scope of the alleged conspiracy during various time periods throughout the full decade." *Id.* The court held that remand was inappropriate because there was no justification for plaintiff's division of its claim into separate suits:

> It is apparent to the court that the time divisions are a deliberate attempt to circumvent the CAFA . . . . The time divisions are completely arbitrary and have no justifiable basis other than as a means to [avoid CAFA jurisdiction] . . . . The time divisions could just as easily have been established at two years, three years or five years.

*Id.* The Court concluded that plaintiff's act of arbitrarily dividing one claim into eleven smaller ones amounted to an attempt to "arbitrarily 'gerrymander' timeframes in order to evade the purview of the CAFA," and such tactics undermine Congress's intent in enacting CAFA. *Id.* at \*4-\*5.

18. In opposition, El Jalisco will likely argue that, as "master of the complaint," it has the ability to structure its claims in such a way as to avoid federal jurisdiction. El Jalisco will most likely look to *Scimone v. Carnival Corp.*, 720 F.3d 876, 881 (11th Cir. 2013) in order to support this proposition. Although *Scimone* does hold that a plaintiff may choose to litigate in a state forum and may structure the complaint to achieve this end, *Scimone* applies only to the mass actions provision of CAFA and not to class actions, and is therefore inapplicable to the instant analysis. *Scimone*, 720 F.3d at 885-87. *Scimone* expressly distinguishes its holding from *Freeman, supra*, by explaining that *Freeman* "dealt with different issues and not with the mass-action provision at issue in this case." *Id.* at 885. *Scimone* further explained that *Freeman*, "which concerned [a] class action[] rather than [a] mass action[], never had occasion to interpret the 'are proposed to be tried jointly' language of § 1332(d)(11)(B)(i) or its interaction with

12

the jurisdictional exclusion of § 1332(d)(11)(B)(ii)(II)—which together make clear that plaintiffs retain the ability to avoid federal jurisdiction simply by not proposing joint trial of 100 or more persons' claims." *Id.* at 886.

19.    Both *Freeman* and *Proffitt* preclude Byrd's Nest, Barb's Country Kitchen, and El Jalisco from arbitrarily gerrymandering their claims in an attempt to circumvent CAFA jurisdiction.  As set forth above and as reflected in their respective Class Action Complaints, in similar fashion to *Freeman* and *Proffitt*, Byrd's Nest, Barb's Country Kitchen, and El Jalisco allege identical causes of action against the same defendants based on the same conduct.  As in *Proffitt*, although Byrd's Nest, Barb's Country Kitchen, and El Jalisco challenge the Sysco defendants' conduct during separate and distinct time periods, the Class Action Complaints filed by these plaintiffs all challenge the Sysco defendants' alleged "fraudulent and unlawful course of conduct," and maintain that the Sysco defendants "engaged in a widespread and systematic practice of charging excessive amounts for the fees at issue in this case."  The language used by Byrd's Nest, Barb's Country Kitchen, and El Jalisco indicate that these plaintiffs liken the implementation of the Fuel Surcharge to a fraudulent scheme and challenge the entirety of the scheme regardless of the discreet timeframes set forth in each individual Class Action Complaint.

20.     As in *Freeman* and *Proffitt*, it is apparent that neither Byrd's Nest,

Barb's Country Kitchen, nor El Jalisco have a colorable basis for splintering their

claims against the Sysco Defendants, and that they have done so only for purposes

of circumventing CAFA jurisdiction.  The invoice histories for Byrd's Nest and El

Jalisco reflect that they do not correspond with the particular time periods set forth

in their respective Class Action Complaints.  As set forth above, the Class Action

Complaint filed by Byrd's Nest seeks relief for fuel surcharges collected from June

27, 2013 through March 21, 2015.  However, Byrd's Nest's invoice history only

reflects that it purchased products from Sysco Central Alabama from February

2016 to April 2016.  Byrd's Nest invoice history is attached as an exhibit to the

Declaration of Jennifer Gourley, attached hereto as **Exhibit "B."**  Similarly, the

Class Action Complaint filed by El Jalisco seeks relief for fuel surcharges

collected from June 26, 2011 through June 26, 2013.  Yet, El Jalisco's invoice

history reflects that it purchased products from Sysco Central Alabama from

November 2011 through June 2017.  El Jalisco's invoice history is attached as an

exhibit to the Declaration of Jennifer Gourley, attached hereto as **Exhibit "B."**

Finally, the Class Action Complaint filed by Barb's Country Kitchen seeks relief

for fuel surcharges collected from March 22, 2015 through March 22, 2017.

**Composite Exhibit "E."**  However, by its own admission, Barb's only paid the

14

Fuel Surcharge in 2016.[4]  These discrepancies demonstrate that the time periods set forth in the Class Action Complaints at issue are purely arbitrary and lack a colorable basis.

**B.   *Byrd's Nest's Disclaimers are Invalid and Cannot Undermine this Court's Amount in Controversy Analysis***

21.    El Jalisco further attempts to circumvent federal jurisdiction by purporting to "bring no claims which would give rise to federal jurisdiction" and further purporting to limit all damages claimed in Plaintiff's Class Action Complaint to $74,500 in the aggregate for plaintiff and any class member or $4,995,000 for the entire class.  Plaintiff's Class Action Complaint ¶¶ 9, 10, and ad damnum clause following ¶ 38.  The Supreme Court held in *Standard Fire Insurance Co. v. Knowles*, 133 S.Ct. 1345 (2013) that a class action plaintiff could not avoid CAFA removal by stipulating that the amount in controversy was below the CAFA threshold of $5 million. *Standard Fire Ins. Co.*, 133 S. Ct. at 1350.  The Supreme Court's rationale is that such a damages limitation cannot have a binding effect on absent class members' claims unless and until the class is certified, so as of the time the class action complaint is filed in state court, the named plaintiff lacked the authority to concede the amount in controversy issues and cannot reduce the value of the putative class members claims as a matter of law.  *Id.*

---

[4] In paragraph 19, note 2 of its Amended and Restated Class Action Complaint, Barb's Country Kitchen itemizes the dates on which it paid the Fuel Surcharge; all these dates are in 2016.

22.    El Jalisco further attempts to circumvent federal jurisdiction by purporting to include in the "wherefore" clause at the end of Counts I and II in Plaintiff's Class Action Complaint the statement "Plaintiff, as set out herein, does not seek punitive damages, on behalf of itself or the putative class", with another such disclaimer of punitive damages being included in the ad damnum clause following ¶ 38.    Based upon the holding in *Standard Fire Insurance Co. v. Knowles*, such a damages limitation cannot have a binding effect on absent class members' claims unless and until the class is certified, so it also cannot be used to defeat CAFA removal.    Even before *Standard Fire Insurance Co. v. Knowles*, federal courts recognized that a class representative plaintiff has a fiduciary duty not to throw away what could be a major component of the class's recovery. *See Back Doctors, Ltd. v. Metropolitan*, 637 F.3d 827, 830-31 (7th Cir. 2011).    After *Standard Fire Insurance Co. v. Knowles*, a class representative plaintiff cannot reduce the amount in controversy on behalf of absent class members, so there is no justification for assigning to an allegation in the complaint weight so significant that it affects CAFA removal. See *Rodriguez v. AT&T Mobility*, 728 F.3d 975, 982 (9th Cir. 2013).

## C.    *Byrd's Nest's Claims Alone Satisfy CAFA's Amount in Controversy Requirements*

23.    The Supreme Court held that a defendant's notice of removal "need only include a plausible allegation that the amount in controversy exceeds the

16

jurisdictional threshold" and "need not contain evidentiary submissions." *Dart Cherokee Basin Operating Company v. Owens*, 135 S.Ct. 547, 551, 554 (2014). "[N]o anti-removal presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court". *Id.*

24.     Where a complaint does not specify the amount of damages sought—as in Plaintiff's Class Action Complaint—and where the amount in controversy is in dispute, the removing defendant must prove by a preponderance of the evidence that the jurisdictional amount-in-controversy is satisfied. *McDaniel v. Fifth Third Bank*, 568 Fed. Appx. 729, 730 (11th Cir. 2014) ("Where the plaintiff does not plead a specific amount of damages, 'the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement.'"); *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912-13 (11th Cir. 2014).[5]

25.     In support of an argument that the amount-in-controversy threshold is satisfied, a removing defendant may submit specific factual details—including declarations or other documentation—to support its contentions. *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 755 (11th Cir. 2010); *S. Fla. Wellness, Inc. v.*

---

[5] In *Dudley*, citing *Dart Cherokee Basin Operating Co. v. Owens*, the Eleventh Circuit Court of Appeals explained, "'when a defendant seeks federal-court adjudication, the defendant's amount in controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' In other words, all that is required is a 'short and plain statement of the grounds for removal,' including 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.' That is the end of the matter, unless 'the plaintiff contests, or the court questions, the defendant's allegation.'" *Dudley*, 778 F.3d 909, 912.

*Allstate Ins. Co.*, 745 F.3d 1312, 1315 (11th Cir. 2014) (In determining the existence of adequate damages to support CAFA jurisdiction, "[a] court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence, to determine whether the defendant has carried its burden.").

26.     El Jalisco purports to bring this action as a class action under Alabama law.  Plaintiff's Class Action Complaint ¶ 9.  Alabama's Rule of Civil Procedure pertaining to class actions, Rule 23, is similar to Federal Rule of Civil Procedure 23. The State Court Action thus constitutes a "class action."   28 U.S.C. § 1332(d)(1).

27.     At least minimum diversity exists because the named Plaintiff is a citizen of a state different than Defendant Sysco Corporation.   28 U.S.C. § 1332(d)(2).

28.     The amount in controversy exceeds $5,000,000.   Plaintiff's Class Action Complaint alleges El Jalisco and members of the putative class paid a "fuel surcharge" which bore no relation to Sysco Defendants' actual fuel costs. *See e.g.,* Plaintiff's Class Action Complaint ¶ 1 ("The "fuel surcharge" has no relation to Defendants' fuel costs, or to any purported increase in those costs.  It is neither a "surcharge" nor it is related to "fuel."   Rather, it is a profit-generating device Defendants created solely to increase their revenue.  The only reason Defendants

18

called this fee a "fuel surcharge" rather than an "extra profit fee" is to deceive Plaintiff and their customers into believing that this is a legitimate, lawful, surcharge related to Defendants' actual or increased fuel costs, when, in fact, it is not.") *Id.* ¶ 19. ("Although the cost of fuel fluctuates and the number of items ordered by Plaintiff varied throughout this time period, Plaintiff was consistently charged $5.00 on its October 31, 2011 through June 17, 2013 invoices for a "fuel surcharge." This amount is excessive and not related to Defendants' actual or increased fuel costs.") *Id.* ¶ 20. ("Defendants' charging and collecting of the "fuel surcharge" is fraudulent . . . Defendants named this fee a "fuel surcharge" to create the false impression that the fee is a legitimate charge, rationally and reasonably related to the actual or increased fuel costs Defendants incur in providing services. However, as alleged herein, this is untrue.") *Id.* ¶ 23. ("Finally, by charging the fuel surcharge, Defendants engaged in a fraudulent practice known as 'double dipping." Fuel costs, like other overhead, are built into the prices Defendants charge their customers. These costs are inherent in the nature of Defendants' business, and Defendants take into account the cost of fuel when determining what prices they charge customers, just as they take into account other overhead. Thus, Defendants are double dipping; charging for the cost of fuel in the rate, and then charging for the purported actual or increased costs of fuel in the rate, and then

19

charging for the purported actual or increased cost of fuel again through the unlawful "fuel surcharge.").

29.     Based upon the allegations in Plaintiff's Class Action Complaint described in ¶ 28 above, as well as the two (2) to six (6) year statutes of limitation applicable to El Jalisco's alleged misrepresentation, suppression, unjust enrichment and breach of contract claims (as applicable), El Jalisco challenges the entire amount of the fuel surcharge paid by the following putative class:

> All Alabama persons and/or Alabama entities who paid "fuel surcharges" and/or other similar charges to Sysco Defendants from March 2011 through June 2017;
>
> and/or
>
> All Alabama persons and/or Alabama entities who entered into a written contract with Sysco Central Alabama, Inc., Sysco Gulf Coast, Inc. and/or Sysco Corporation who paid "fuel surcharges" and/or other similar charges to Sysco Defendants from March 2011 through June 2017.

30.     In addition to being correctly tied to the longer six (6) year contract statute of limitation, the March 2011 start date is also correct because Sysco Corporation began assessing fuel surcharges in March 2011, and the June 2017 end date is correct because Plaintiff's Class Action Complaint was filed June 26, 2017. *See* Gourley Declaration attached as **Exhibit "B"**.

31.     Sysco disputes El Jalisco's characterization of the fuel surcharge, denies El Jalisco's allegations and claims, denies class certification is appropriate,

denies liability and denies El Jalisco or any member of the putative class is entitled

to any damages whatsoever. Without prejudice to Sysco's continued reservation of

all its defenses to liability, damages and class certification in this action, under

CAFA, the pertinent question is what is in controversy in the case, not how much

(if any) El Jalisco is likely to recover in the State Court Action. As a first step,

Sysco has calculated (a) the amount of Fuel Surcharges, (b) paid to Sysco affiliates

by all persons or entities residing in Alabama, (c) between July 2013 and June

2017. As detailed in the Gourley Declaration attached as **Exhibit "B,"** the total

amount of fuel surcharges that include Sysco Gulf Coast, Inc. (Alabama customers

only) and Sysco Central Alabama, Inc. customers is **$4,255,745**. The report

attached as **Exhibit "1"** to the Gourley Declaration and the amounts referred to

hereinabove do not attempt to set forth any fuel revenue derived from charges

other than the one type of fuel surcharged challenged in Plaintiff's Class Action

Complaint.[6]

32. This is only the first step because the relevant time frame which

Plaintiffs' Class Action Complaint has placed in controversy is from March 2011

through June 2017, but the report attached to the Gourley Declaration as **Exhibit**

---

[6] As further explained in the Gourley Declaration, the $4,255,745 figure reflects fuel surcharges paid during the time period of July 2013 to June 2017 by persons or entities residing in Alabama to the Sysco affiliates that service Alabama customers—Sysco Central Alabama, Inc. and Sysco Gulf Coast, Inc.. Sysco Gulf Coast, Inc., services customers in both Florida and Alabama. The amount paid in fuel surcharges by Alabama customers has been segregated from the amount paid to Sysco Gulf Coast by persons or entities residing in Florida.

21

"1" only covers July 2013 through June 2017, so estimates of fuel surcharges using a simple average calculation are used for FY 2012 (which begins July 1, 2011 and ends June 30, 2012) and for FY 2013 (which begins July 1, 2012 and ends June 30, 2013). The estimated fuel surcharge revenue for FY 2012 as calculated by Sysco Corporation is **$1,092,350** and the estimated fuel surcharge revenue for FY 2013 as calculated by Sysco Corporation is **$1,092,350**. When these fuel surcharge estimates are added to the actual **$4,255,745** amount shown on Gourley Declaration **Exhibit "1"**, the total fuel charges amount in controversy equals **$6,440,445**[7] for July 2011 through June 2017. See Gourley Declaration **Exhibit "2"** for a breakdown of the numbers used to arrive at the $6,440,445 total amount in controversy. These figures include the **$4,255,745** amount Sysco Corporation records reflect was already paid for the fuel surcharge challenged by Plaintiff's Class Action Complaint for July 2013 through May 2017, and estimates the amounts paid for the fuel surcharge challenged by Plaintiff's Class Action Complaint for July 2011 through June 2013 at **$2,184,700**, to arrive at the total amount in controversy of **$6,440,445**, exclusive of interest, attorney's fees and costs.

---

[7] This figure excludes transportation revenue described by any other term, such as delivery, pickup, mileage, freight, etc. and fuel revenue associated with refueling fees paid in advance of the rental, as well as other charges associated with the refueling, such as fuel delivery fees, and fuel charges for propane tank rentals and refills of propane tanks.

37505313v1

33.     The final step involves calculating attorneys' fees that would result in a fee award if El Jalisco were successful through litigation or settlement, which adds even more to the total amount in controversy.    Alabama recognizes two principal kinds of equitable attorney's fee shifting as exceptions to the "American rule", the "common fund" doctrine which authorizes the trial court to deduct as an attorney's fee a reasonable percentage of at least 20% of a common fund that the class representatives have collected for distribution among the class, and the "common benefit" doctrine which permits an award of fees to be paid by the defendant, independent of any fund, when the plaintiffs have conferred some kind of benefit on the public. *Davis v. Carl Cannon Chevrolet*, 182 F.3d 792 (11th Cir. 1999); *Leonard v. Enterprise Rent A Car*, 279 F. 3d 967 (11th Cir. 2002). *Carl Cannon Chevrolet* and *Enterprise Rent A Car* were both decided before the enactment of CAFA which allowed for aggregation to establish CAFA jurisdiction, while pre-CAFA diversity jurisdiction law did not permit aggregation at all.    In both *Carl Cannon Chevrolet* and *Enterprise Rent A Car,* the Eleventh Circuit held that Alabama courts had applied the "common benefit" doctrine to require the defendant to separately pay attorney's fees to class counsel only where the Alabama courts had found there to be a benefit conferred upon the general public, which the Eleventh Circuit held did not apply to either of those lawsuits. *See Board of Education v. Waldrop*, 840 So.2d 893, 897 (Ala. 2002).    In contrast,

23

Plaintiff's Class Action Complaint plainly contends that that Plaintiff is conferring a benefit upon the public by using this lawsuit to go after the Sysco Defendants for "widespread and systematic practice of charging excessive amounts" for the fuel surcharge fees at issue, which Plaintiff contends is "inequitable", "fraudulent", "unjust" and "unconscionable", and which Plaintiff further alleges constitutes "a pattern and practice of this conduct through Alabama," whereby "many other Alabama small businesses have been forced to pay the misrepresented, excessive and deceptive 'fuel surcharges'" Plaintiff's Class Action Complaint ¶¶ 1, 13, 19, 20, 21, 22, 23, and 24. Sysco Defendants are certainly faced with a plausible prospect that Plaintiff will see to recover attorney's fees from the Sysco Defendants under the "common benefit" doctrine, in which case Plaintiff's attorney's fees should be included as an additional amount in controversy for purposes of determining jurisdiction under CAFA.

34.     The Eleventh Circuit has itself cited to a study which found the average attorney fee recovery is 21.9% of the total recovery. *See Allapattah SvCs., Inc. v. G.G.S. K., Inc.*, 362 F.3d 739, 760 (11th Cir. 2004) (citing Theodore Eisenberg & Geoffrey P. Miller, *Attorney's Fees in Class Action Settlements: an Empirical Study* (2003). A 21.9% attorney's fee award based upon the **$6,440,445** amount of fuel surcharges in controversy set forth in the Gourley Declaration would add an additional **$1,410,457** to the total amount in controversy. Even more

24

on point, attached as **Exhibit "C"** hereto are Class Action Settlement Notices from

five (5) proposed fuel surcharge class action settlements, four (4) of which

involved Plaintiff's counsel firm of McCallum, Methvin & Terrell, P.C., which on

average sought an even higher one-third (33 1/3%) of settlement fund Attorney's

fee award.   *See Attorney's Fee Chart* and selected supportive class action

settlement documentation attached as **Exhibit "C"** hereto [8].   In *Camden I*

*Condominium Association v. Dunkle*, 946 F.2d 768 (11th Cir. 1991), the Eleventh

Circuit observed that a 25% "bench mark" percentage fee award was often awarded

by district courts in common fund class action cases. *Id.*[9] at 774-75.   Accordingly,

a plausible range of attorney's fees to be added to the total amount in controversy

ranges from **$1,410,457** (21.9%), includes **$1,610,111** (25%), and is as high as

**$2,144,668** (33 1/3%), based upon the **$6,440,445** in March 2011 to June 2017 fuel

surcharges.

35.   In sum, if Plaintiff's plausible "common benefit" doctrine attorney's

fees are included in calculating the total amount in controversy for CAFA removal

jurisdiction purposes, then **$1,410,457** (21.9%), **$1,610,111** (25%) or as high as

---

[8] The Chart at **Exhibit "C"** has **Attachment Nos. 1-5,** which are copies of the *Notices of Class Action Settlements* for each of the cases listed in the Chart. In the "How will the lawyers be paid?" section the manner of calculating the attorney's fee award for class counsel in each case is set forth. **Chart Attachment No. 6** is a *Memorandum of Law in Support of Plaintiff's Unopposed Motion for Award of Attorney's Fees* that was filed in that Kansas federal case which contains citations to authority and argument from class counsel in that case in support of a one-third of settlement fund attorney's fee award.
[9] Brian T. Fitzpatrick's *An Empirical Study of Class Action Settlements and Their Fee Awards*, Vo. 7, Issue 4, Journal of Empirical Legal Studies (Dec. 2010)(copy attached as **Exhibit "D"**) observed that the mean percentage of settlement awarded as fees in the Eleventh Circuit was 28.1% and the median was 30%.

**$2,144,668** (33 1/3%) can plausibly be added to the **$6,440,445** amount of fuel surcharges from the Gourley Declaration, and this would result in a total amount in controversy arising from the claims at issue in Plaintiff's Class Action Complaint for March 2011 through June 2017 of between **$7,850,902** and **$8,585,113**.

36.    CAFA's expanded jurisdiction only applies to class actions comprised of 100 or more members in the aggregate. El Jalisco alleges that the "number of members of the putative class exceeds sixty (60) members." Plaintiff's Class Action Complaint.   ¶ 14.  As set forth in the Gourley Declaration, affiliates of Sysco Corporation (specifically Sysco Central Alabama, Inc. and Sysco Gulf Coast, Inc.) have well over 100 customers that are Alabama residents who paid the disputed "fuel surcharge" during the time period at issue.    28 U.S.C. § 1332(d)(5)(B). *See e.g., Miedema v. Maytag Corp.*, 450 F.3d 1322, 1327 n.4 (11th Cir. 2006) (finding that the notice of removal—which stated that the putative class members numbered in the thousands—satisfied 28 U.S.C. § 1332(d)(5)(B)). The Gourley Declaration further demonstrates that Sysco Corporation business records show that the number of Sysco Gulf Coast, Inc. customers shipped to in Alabama is 2,023 since July 2013 (which represents only part of the relevant class period), and the number of Sysco Central Alabama, Inc. customers shipped to in Alabama was 2,732 in FY 2012, 2,660 in FY 2013, 2,558 in FY 2014, 2,424 in FY 2015, 2,419 in FY 2016 and 2,247 in FY 2017.

26

37.     None of CAFA's discretionary or mandatory exceptions to jurisdiction apply here because, as discussed above, Sysco Corporation is a citizen of Delaware and Texas. *See* 28 U.S.C. §§ 1332(d)(3)-(d)(4).

38.     Accordingly, because the State Court Action is a putative class action with 100 or more class members, is between citizens of different states, and places more than $5,000,000 in controversy, removal is proper pursuant to 28 U.S.C. §§ 1332(d) and 1453.

WHEREFORE, Sysco Defendants hereby remove the State Court Action from the Barbour County Circuit Court, Eufaula Division.

Respectfully submitted, July 27, 2017.

Michael B. Beers [ASB-4992-S80M]
Mike.Beers@butlersnow.com
Carol T. Montgomery [ASB-1095-J18N]
Carol.Montgomery@butlersnow.com
Melonie S. Wright [ASB-6258-T11Y]
Melonie.Wright@butlersnow.com
**BUTLER SNOW LLP**
250 Commerce St., Suite 100
Montgomery, Alabama 36104

Joseph F. Wellborn III (*Pro Hac Vice to be filed*)
Tennessee Bar No. 15076
Joe.Welborn@butlersnow.com
**BUTLER SNOW LLP**
150 Third Avenue South, Suite 1600
Nashville, Tennessee 37201

27

T. Todd Pittenger  (*Pro Hac Vice to be filed*)
Florida Bar No.: 0768936
email:  Todd.Pittenger@akerman.com
London L. Ott  (*Pro Hac Vice to be filed*)
Florida Bar No.: 95058
email:  London.Ott@akerman.com
**AKERMAN LLP**
420 South Orange Avenue
Suite 1200
Orlando, FL  32801-4904
Phone:  (407) 423-4000
Fax:  (407) 843-6610
*Attorneys for the SYSCO DEFENDANTS*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 27th day of July, 2017, I E-filed the foregoing document by using the Court's E-Portal filing system which will serve a copy on counsel of record; and, I further certify that I furnished a copy of the foregoing by *Electronic Mail* to:

Courtney Cooper Gipson
Robert G. Methvin, Jr.
Rodney E. Miller
Patrick C. Marshall
MCCALLUM, METHVIN &
TERRELL, P.C.
2201 Arlington Avenue South
Birmingham, Alabama  35205
Telephone:  (205) 939-0199
Facsimile:  (205) 939-0399
cgipson@mmlaw.net
rgm@mmlaw.net
rem@mmlaw.net
pmarshall@mmlaw.net
*Attorneys for Plaintiff*

Richard A. Harrison
Law Offices of Richard A. Harrison
104 East Broad Street
Eufaula, Alabama  36027
Telephone:  (334) 687-4824
Facsimile:  (334) 687-4826
*Attorneys for Plaintiff*

37505313v1